to do with the expert opinion of Mr. Jalezpaca, I hope I'm pronouncing his name correctly. Since he was an expert and his testimony was admitted, this is an abuse of discretion standard. Now, as an expert, he had to testify his opinion has to be based on sufficient facts or data. Testimony is the product of reliable principles and methods, and that the witness applied those principles and methods reliably to the case. That's U.S. v. Pena, which is the first circuit court case. Now, here there's no doubt that the government, as the government requested, Mr. Jalezpaca is a firearms expert. There's no issue there. However, he was qualified as, and I quote, an expert to testify concerning the association between the object on the photograph and a real pistol, and the association as to the characteristics if they're consistent with each other. I believe that's page 140 of the appendix. However, during his cross-examination, Mr. Jalezpaca admitted that he had received no training examining a firearm versus a replica. He had testified during his lawyer that it was very important to him that he had received on-the-job training by people who were qualified in toolmaker examining. But he had never examined a Glock replica. He had examined some replicas, but not the Glock replica. There were Glock fakes. And he could not decide or could say that the photographs depicted a real gun, or if it was a toy gun, a replica firearm, or a functioning firearm. Now, since he has never been trained in replicas, he never testified. He examined Glock replicas. And he never explained the reliability of his methods and principles, and the error rate of the technique, whether it had been peer-reviewed, et cetera. It is our position that his testimony didn't have the basis needed in the Supreme Court case of Daubert and Kumho Tire, which are, I think, the relevant cases from the Supreme Court in this aspect. Does the record contain anything that indicates whether or not there is such a thing as training in the identification of replicas? I didn't find anything, Your Honor. No? No. I mean, you would think if someone is an expert, let's say in Mercedes automobiles, that you would think that without any further training than that expertise, that that person would be very well suited to separate out a fake Mercedes from a real Mercedes, if there's no special training in identifying the fake. Two caveats I would put to your question. Number one, there is no evidence that he actually handled a fake. So the question would be in the abstract. Yeah, but is there any evidence that a real expert would have to handle the fake? You would think, if you're an expert in a particular object and its characteristics, that just a visual examination, seeing the photograph of something, you may very well be able to spot a fake, whereas it might be good enough to pass muster with someone who is not an expert. But that's contrary to his testimony. He testified that he wouldn't be able to say that unless he handled the weapon. I've handled firearms and replicas. And the real test is when you have it in your hand, the weight, the feel of the metal, et cetera. Why wasn't it sufficient for the jury you got to cross-examine or trial counsel got to cross-examine? He admitted the limitations of his testimony. So it strikes me that this is more a jury question than an admissibility per se question. Okay. As I see it, when the Supreme Court decided, Daubert and later Cornwall-Tyer, which are the two basic cases here, they put the court as a gatekeeper. Correct. And if so, how did the court abuse its discretion? The problem, Your Honor, as we all know in cases, when you put an expert, you're giving him an incrementer of knowledge. And his weight, his testimony has great weight, no matter how you look at it. And by doing that, the court abuses discretion. I'm sorry. I thought you just conceded in response to Judge Selye's questions that he actually is an expert on Glock firearms. No, he's an expert on firearms. I have no doubt about that. And why would one exclude Glocks from his experience, then? I will concede, for the sake of the argument, an expert in Glocks. But, again, his testimony is, in order for me to determine whether it's a toy gun, a replica, or a firearm, I have to handle it. If he hadn't been handling it, he can testify to that. That's my point. I believe the government also argues that it's harmless error, if anything here, because the two women who were the subject of this assault and carjacking had the guns actually one put to her head, and as to the other one, stuck in her side, I think. And that, as far as they were concerned, from the weight and hardness of the objects, they were real firearms. If I may, that's my first argument, but I'll go into your question. The difference is that in charges 4 to 6, it's not what he did. It's in charge 3. Charge 4 to 6 are photographs. They're not definitive. If we go into what they felt and saw, what we know is that there were a pistol, it was black, and it fell hard. And that there's testimony also that one of the assailants had a shorter, I think it was magazine, than the other. Those are the facts that we know. Now, that could, which I don't think it does, but it could convince that when they actually did the crime, they had a real gun. I'll argue that in a minute. But the photographs is where I was arguing originally. That's what we don't, he couldn't handle it. Nobody handled it. Not the witnesses, no one. I had raised this in the context of whether there was any prejudice. You've somehow suggested the two topics are unrelated. It seems to me they're related. Well, it seems to me, Your Honor, I beg to differ. That one thing, again, is a person saw this and fell the gun. That's the testimony we have. Quite another is from a photograph, but not of the actual carjacking. Let me see if I understand your argument. You're saying that the harmless error point that Judge Lynch is making, which I frankly think is a valid one, goes to the counts of active commission of the crime of carjacking, but does not go to counts four to six, which involve, supposedly involve, other firearms? Exactly. And I'll go into the actual occurrence. I believe that there's several cases that the First Circuit has said that the eyewitness accounts are valid. But they're all based on the case of Kirvan, which is a 1997 case. The Kirvan case, there is a big difference with this one in terms that the gun during the Kirvan, it was a bank robbery, robbery, fell to the floor, and they said very clearly it felt heavy, the witnesses, I'm sorry. And the court at page 966-967 says, although some toy guns might be of similar size and color, the heavy weight certainly would not be as common in a toy gun. Now, we don't have that evidence here. Also, in 2000, Rule 701 was amended that if the testimony, the lay testimony given is such that would require an expertise, then they cannot testify to that. My point being that if the government had to use an expert in the photographs, I think that the lay testimony of these persons was not sufficient, not even in the Kirvan, to convict him of the use of firearms. Well, that doesn't follow at all. It seems to me that the average person might very well be able to tell that a gun that's pressed against your head is a real gun, whereas that same person looking at a photograph of a gun might not be able to make that same comparison. With all due respect, I think you're mixing apples with oranges. Well, even if I were, Your Honor, and I humbly make the difference, the big difference again in Kirvan is what the court found. The gun felt heavy, and that was eyewitness testimony, because there was two eyewitness testimonies. One that was silver and shiny, and the other one that it was black and had a five-inch barrel. Here we have, it's a black pistol, and it fell hard when it was put to her head. And three, one magazine was longer than the other. Well, it seems that I'm over- Counsel, I want to ask you one question before you step down. The expert witness acknowledged that he could not exclude the possibility that the guns that were seen on the photographs were replicas. Is that correct? Yes. To what extent did he quantify? He didn't quantify, Your Honor. What exactly did he say, simply that he could not exclude the possibility? He could not say at that time whether it was a toy gun, a replica, or a real firearm. That was his testimony. Is it your argument that because of that acknowledgment, that that is tantamount to an acknowledgment that the government cannot prove beyond a reasonable doubt that the guns shown on the photographs were real guns? Are you equating that concession to the prove-beyond-a-reasonable-doubt standard? Yes, and other things, but basically that would be it, Your Honor. And I think I'm almost out of time. Thank you. Good morning, Your Honor. Susan Jorgensen on behalf of the United States. Good morning, Counsel. Can we start with Judge Lopez's point? With respect only to counts four to six, what effect does the expert witness's concession that he can't exclude the possibility that the guns shown in the cell phone photos were toy guns rather than real guns, what effect, in your view, does that have on the government's case? Your Honor, what he said was that he couldn't testify to 100 percent degree certainty. But did he also testify that it was his opinion to some reasonable degree of probability? That's correct. He did do that, and he had a number of indications that he testified to the jury, showing them the pictures why he believed that the firearm was a genuine firearm. For instance, he said that there were compensator cuts in the firearm, which you don't see in replicas generally, which allows the gun, gives the gun less of a kickback, allows the energy to flow through the gun out the sides. He said there was a slider mechanism that you don't see normally on toy guns. And he also noted several grooves and other markings that Glocks have that he said he has not seen on replicas. He showed the jury the pictures of the gun and explained exactly what he had used to analyze in each picture that it was a real gun. In addition, under United States v. Roberson, 924C requires proof that the gun is real, but it need not reach the level of scientific certainty in order for the conviction to be upheld. And where did the photographs come from? The photographs came from the defendant's phone, Your Honor. Isn't that an important point? Yes, Your Honor, it is. The photographs came from the defendant's phone, and they were time and date stamped, and they showed him holding the guns. But why does that, just on that issue, the fact that the pictures were taken from his cell phone, why does that add to the government's case that they're real guns? Is there some notion that you wouldn't bother to take such pictures or have pictures taken of you with a gun unless they were real? I mean, what is the logic that adds to the evidentary significance of the fact that the pictures were taken from his cell phone? Well, Your Honor, first of all, I do think that's a valid point. I don't think you would take pictures of yourself with guns unless they were real, but it's part of the gang culture that they take pictures of themselves to demonstrate their prowess, I guess you would say, and they keep pictures of themselves in the phones and post them. Is that your opinion, or is there any evidence that that's part of a gang culture? They didn't talk about that in the trial, no. But they did explain that it was from his phone, I'm sorry, and they did have the toolmark examiner and they did extensive cross-examination of the toolmark examiner and his qualifications and his methodology. And as I said, he showed the picture to the jury and identified each and every mark that he had used to determine that the weapon was a Glock, and he was extensively cross-examined by defense counsel. If I could move to the sentencing issue, the only charge on which the judge went over the GSR was count three, and for that count he gave him 25 months more than the GSR. The GSR was 84 months because the statutory minimum is 84 months, and the maximum is life. So in fact, the judge gave him the low end of the statutory range. He gave him 109 months for count three. The judge also gave extensive reasons for why he was doing this. He said that the individual's record demonstrated a clear proclivity towards firearms from a very early age, and that he had in the past robbed an individual at gunpoint and aimed the weapon at this individual and discharged it twice in a public place. In addition, he noted the violence of this particular incident and that the gun was held to one woman's head and to another woman's abdomen, and he cited the danger that he believed the defendant posed to the public. So it is the government's position that that was not an abuse of discretion. It was only 25 months above the GSR and at the low end of the statutory range. As to the sufficiency of the evidence issue, that's taken in the light,  and in this particular case, there was quite a bit of evidence as to the genuine quality of the guns. Both the aunt and the niece testified that they were only two to three feet from each other when the incident first began and the individuals were pointing the guns at them. They testified as to the color of the guns. The aunt testified that one of the guns had a longer handle than the other, meaning it had an extended magazine. They both testified that the guns were held against them, one against her temple and the other against her abdomen. The aunt testified that she was keenly aware of the gun because of the fact that Martinez was so aggressive with her niece that she feared that he was going to kill her. So there are quite a few factors which go to that testimony and show that that evidence was sufficient. In addition, to go back to your earlier question, I've come across in my notes some of the things that the agent testified to in regards to the photographs. He testified that he was able to tell the weapon was a Glock because it didn't have a hammer. It had serrations typical of Glocks. It had the C designator, which meant it was a compensated pistol, and it had a slide cover plate with serrations typical of a Glock. So if your honors have no further questions. Thank you, your honors. Thank you, counsel. Thank you.